IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE ROMERO, | ) | |
|     Petitioner, | ) | Civil Action No. 14-11 Erie |
| | ) | |
| v. | ) | District Judge J. Frederick Motz |
| | ) | Magistrate Judge Susan Paradise Baxter |
| BOBBY L. MEEKS, | ) | |
|     Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Jose Romero, be denied.

### II.     REPORT

Petitioner is a federal inmate who is incarcerated at FCI McKean, which is located in Bradford, Pennsylvania. He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in which he contends that this Court should issue an order directing that he be released immediately.

    **A.**     **Relevant Background**

On January 4, 2011, Petitioner was sentenced in the U.S. District Court for the Southern District of Florida to a 61-month term of imprisonment, to be followed by a four-year term of supervised release, for Conspiracy to Possess With Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846. On September 13, 2011, the Bureau of Prisons (the "BOP" or "Bureau") designated Petitioner to FCI McKean.

1

The next month, Petitioner began the BOP's Residential Drug Abuse Treatment Program ("RDAP"). In the Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA"), Pub.L. 103-322, and amendments thereto, Congress directed the BOP to "make available appropriate substance abuse treatment for each prisoner [it] determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). To provide inmates with an incentive to participate in the substance abuse programs, Congress vested the BOP with the authority to reduce the sentences of certain inmates who successfully complete the programs. This authority is set forth in 18 U.S.C. § 3621(e)(2)(B), which provides:

> **Period of Custody. --** The period a prisoner convicted of a nonviolent offense remains in custody *after successfully completing a treatment program may be reduced by the Bureau of Prisons*, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

(Emphasis added).

To accomplish the congressional mandate of VCCLEA, the BOP provides a multipronged treatment delivery system, including the RDAP, which consists of three components: (1) a Unit-based residential program lasting between six and 12 months; (2) an institution transition phase, if time allows between completion of the Unit-based component and transfer to a community program; and, (3) a community transitional services component during which the inmate is transferred to a Residential Re-entry Center ("RRC," formerly known as a halfway house) or to home confinement. 28 C.F.R. §§ 550.53, 550.56. Importantly, "[f]or inmates to successfully complete all components of RDAP, they must participate in [Transitional Drug Abuse Treatment ("TDAT")] in the community [during the third component of the RDAP]. If inmates refuse or fail to complete TDAT, they fail the RDAP and are disqualified for any additional incentives." 28 C.F.R. § 550.56(a). Upon successful completion of the

2

RDAP, and assuming an inmate meets all of the eligibility requirements, the BOP may grant the inmate a sentence reduction of up to 12 months pursuant to § 3621(e)(2)(B).

On August 10, 2012, Petitioner's Unit Team at FCI McKean reviewed him for in placement in an RRC, where he would move on to the third component of the RDAP and participate in the TDAT. His provisional early release date was projected to be November 13, 2013. That was the date he would be released *if he successfully completed all components of the RDAP program and received the 12-month sentence reduction under § 3621(e)(2)(B)*. Petitioner's Unit Team recommended that Petitioner receive a 180-day RRC placement. Deanna Tronetti, the Unit Team Manager, approved that recommendation. (Resp's Ex. 2c, Community Programming Consideration/Re-Consideration, ECF No. 10-16 at 2).

Petitioner successfully completed the institutional phase of the RDAP at FCI McKean, and on May 21, 2013, he was transferred to the Brooklyn House RRC in New York. At the RRC, Petitioner would participate in the community-based TDAT.

On June 11, 2013, staff at the RRC issued Incident Report Number 2461514 (hereinafter "First Incident Report") to Petitioner. It charged him with Insolence Towards a Staff Member and Violating a Condition of Community Programming, in violation of Codes 312 and 309, respectively. (Resp's Ex. 2e, Center Discipline Committee ("CDC") Packet for Incident Report Number 2461514, ECF No. 10-8 at 2-3). On June 11, 2013, staff issued a second Incident Report, Number 2459269 (hereinafter "Second Incident Report"), which charged Petitioner with Insolence Towards a Staff Member, in violation of Code 312. (Resp's Ex. 2f, CDC Packet, Case No. 2459269, ECF No. 10-19 at 2-3).

Petitioner had CDC hearings for each incident report on June 14, 2013. The CDC determined that Petitioner committed the Code violations as charged. As sanctions, the CDC recommended that Petitioner be transferred to a more secure facility and lose good conduct time. A Discipline Hearing

3

Officer subsequently upheld the decision of the CDC. (Resp's Ex. 2f, ECF No. 10-19 at 7; Resp's Ex. 2e, ECF No. 10-18 at 7).

Because Petitioner was found to have committed Code violations, he was deemed an "RRC failure," a "Community Treatment Services" failure, and a "Drug Treatment Failure," and was transferred back to FCI McKean. (Resp's Ex. 1d, Inmate History, ECF No. 10-5 at 2; Resp's Ex. 1e, Psychology Data System Administrative Notation, dated June 20, 2013, ECF No. 10-6 at 2). Petitioner's provisional early release date was removed because he did not complete the TDAT component of the RDAP, which, as noted above, is a prerequisite for a reduction in sentence under § 3621(e)(2)(B). Thus, Petitioner is no longer eligible for the one-year sentence reduction under § 3621(e)(2)(B), and his projected release date has been reset to November 13, 2014. (Resp's Ex. 1f, Request to Delay, Remove or Reinstate Early Release; Resp's Ex. 1g, Change in RDAP and § 3621(e) Status, ECF No. 10-7 at 2).

On October 29, 2013, Petitioner's Unit Team at FCI McKean evaluated him again for a pre-release placement in an RRC. During this review, they had to consider the fact that Petitioner was an RRC violator due to the disciplinary actions taken against him for the First and Second Incident Reports. It was determined that Petitioner's placement in an RRC would be limited to only 30 days. Petitioner is scheduled for his RRC placement to commence on October 15, 2014. (Resp's Ex. 2g, Community Programming Consideration/Re-Consideration form, dated October 29, 2013, ECF No. 10-20 at 2).

In the petition for a writ of habeas corpus that he filed with this Court, Petitioner contends that he is entitled to be released immediately because he should have been released on November 13, 2013. Although he asserts that his CDC hearings were unfair, he is not challenging the disciplinary proceedings *per se*. Rather, he argues that the fallout from having been found to have committed the Code violations as charged in the First and Second Incident Reports – *i.e.,* the loss of eligibility to receive the § 3621(e)(2)(B) sentence reduction – has amounted to "extra sanctions," and the decision to

4

deny him early release "is arbitrary capricious and manifestly contrary to the statute[.]" (ECF No. 4 at 2). Petitioner also argues that he should have been placed in home confinement for 180 days prior to his release date in accordance with 18 U.S.C. § 3624(c) and that the decision that he receive only 30 days of placement in an RRC was "arbitrary and capricious." (ECF No. 9 at 1; see also ECF No. 11).

Respondent has filed an Answer (ECF No. 10) to which Petitioner has filed a Reply (ECF No. 9) and an Amended Reply (ECF No. 11).

### B. Discussion

#### 1. Petitioner Failed to Exhaust His Administrative Remedies

A federal prisoner who has complaints about the denial of § 3621(e)(2)(B)'s early-release benefit or a decision regarding how long he will receive RRC placement and/or home confinement must first attempt to resolve his concern informally, followed by administrative grievances at the institutional, regional, and national levels of the BOP. 28 C.F.R. §§ 542.13–.18. See also 28 C.F.R. § 550.57 ("Inmates may seek formal review of complaints regarding the operation of the drug abuse treatment program by using administrative remedy procedures in 28 CFR part 542."); BOP Program Statement 7430.02, Community Transitional Drug Abuse Treatment, Page 7 (If an inmate is removed from TDAT treatment due to disciplinary proceedings, he must challenge the loss of early release eligibility by filing an administrative remedy request. "In order to expedite staff response, an inmate … must … indicate in the first sentence of the request that the request affects the inmate's early release."); see, e.g., Vasquez v. Strada, 684 F.3d 431, 433 (3d Cir. 2012).

In order to obtain federal habeas relief under 28 U.S.C. § 2241, a prisoner must have first exhausted the BOP's administrative remedies. See, e.g., Vasquez, 684 F.3d at 433 (citing Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)). The exhaustion requirement is mandated

5

because it promotes the important goals of: (1) providing the BOP with the opportunity to correct its own errors before the federal court becomes involved, thus fostering administrative autonomy; (2) permitting the BOP to grant the relief requested if such relief is warranted, which conserves judicial resources; and, (3) allowing the BOP the opportunity to develop a factual record and apply its expertise, which facilitates judicial review in the event such review is required. See, e.g., Moscato, 98 F.3d at 761-62.

Petitioner has not established that he exhausted his administrative remedies with respect to either the BOP's decision to deny him § 3621(e)(2)(B)'s early-release benefit after he was removed from the RRC and deemed an RDAP failure, or its decision that he receive only 30 days of RRC placement and no home confinement. He contends that he should be excused from the exhaustion requirement because it would be futile to pursue his administrative remedies. His argument must be rejected because this is not the type of case where waiver of the exhaustion requirement is available. See, e.g., Vasquez, 684 F.3d at 433-34.

A habeas court may excuse a federal prisoner's failure to pursue his administrative remedies in the limited circumstance when it is shown that his efforts to exhaust would be "futile" and the goals of the exhaustion doctrine would not be promoted. See, e.g., Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 239 n.2 (3d Cir. 2005). In Woodall, a federal prisoner challenged the validity of BOP regulations that limited an inmate's placement in a halfway house to the lesser of ten percent of the inmate's total sentence or six months (28 C.F.R. §§ 570.20-21 (2005)). He did not exhaust his administrative remedies, but argued that he was not required to do so because exhaustion would be futile. The district court agreed, stating: "[E]xhaustion of administrative remedies is not required where exhaustion would not promote" the goals of the doctrine. Woodall v. Federal Bureau of Prisons, No. 05-

1542, 2005 WL 1705777 * 6 (D.N.J. July 20, 2005) (citing Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) and Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)). It concluded:

> Here, it does not appear that there is any need to develop a factual record. Nor does this matter require application of the agency's particular expertise. Woodall does not challenge the application of the BOP's ten-percent rule to him, but challenges whether the ten-percent rule legally implements the statute pursuant to which it was promulgated. This is a question within the expertise of courts [under Chevron]. Accordingly, the purposes of the exhaustion requirement would not be served by requiring Woodall to exhaust his administrative remedies.

Id. The U.S. Court of Appeals for the Third Circuit subsequently affirmed the district court's resolution of the issue. Woodall, 432 F.3d at 239 n.2. It held that because "the purposes of exhaustion would not be served here by requiring Woodall to exhaust his administrative remedies[,]" he was excused from the requirement. Id.

Unlike the federal prisoner in Woodall, Petitioner in this case is not challenging the legality of BOP regulations. Nor is he presenting an issue of statutory construction. Rather, he his challenging the BOP's discretionary decisions and the application of its regulations and policies to him. Thus, this case does not present the type of legal issue that is within the expertise of a federal court but not the BOP's. Vasquez, 684 F.3d at 433-34 ("We have held that a prisoner need not exhaust administrative remedies where the issue presented involves only statutory construction, but Vasquez asked the District Court to direct the BOP to provide him with the maximum 12-month RRC placement.… Exhaustion was required in his case, and Vasquez's habeas corpus petition properly was dismissed for failing to exhaust administrative remedies.") (internal citation omitted). And, in contrast to Woodall, where exhaustion was futile because the court could confidently predict that the petitioner would not receive relief through the administrative process since the BOP was not going to deviate from its regulations, this Court cannot with certainty predict how the BOP's General Counsel's Office would have ruled on Petitioner's administrative appeal if he had filed one challenging the decisions at issue in this case. Petitioner's belief

7

that he would not have received the relief he now seeks in his petition through the BOP's administrative review process does not excuse him from the exhaustion requirement. Vasquez, 684 F.3d at 434 (petitioner's federal habeas claim challenged the length of his RRC placement properly dismissed for failing to exhaust administrative remedies); Garcia v. United States, 518 F.App'x 78, 79 (3d Cir. 2013) ("Here, Garcia argued that his failure to exhaust should be excused … [e]ssentially, he argued that because his request for RRC placement would be denied no matter what, there was no point in making it in the first place. We agree with the District Court that Garcia merely sought to 'bypass the administrative process entirely and purposely in anticipation of yet-to-be made but preconceived notion of his RRC determination.' That is not a reason to excuse the firm requirement of exhaustion."); Wilson v. Strada, 474 F.App'x 46, 48 (3d Cir. 2012) ("Contrary to [the petitioner's] assertion in the proceedings below, he was not merely challenging the construction of the Second Chance Act, or the BOP's implementation of the Federal prisoner reentry initiative. Exhaustion was required in his case, and Wilson's habeas corpus petition properly was dismissed for failure to exhaust administrative remedies.").

Petitioner also argues that he will be irreparably harmed if the Court does not waive the exhaustion requirement and grant him the relief he seeks (an order directing that he be released immediately). His argument must be rejected. The BOP is not currently holding him beyond the term of imprisonment imposed by the U.S. District Court for the Southern District of Florida. His original projected release date of November 13, 2013, was just the date the BOP advised him he would be released if, among other things, *he successfully completed the RDAP program*. After Petitioner was removed from the RRC and deemed a drug treatment failure, his projected release date was recalculated and is currently set at November 13, 2014. He is not being irreparably harmed because he must continue to serve his judicially imposed sentence. See Amirnazmi v. Scism, No. 3:11-cv-273, 2011 WL 5854579, *6-7 (M.D. Pa. Nov. 21, 2011) ("Petitioner's argument that exhaustion would be futile or cause

irreparable injury also fails. Courts in this District have repeatedly held that exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates that he will be unsuccessful in his administrative appeals before" the date he believes he should be released to a halfway house) (citations and internal quotations omitted); Ross v. Martinez, No. 09-1170, 2009 WL 4573686, *3 (M.D. Pa. Dec. 1, 2009) (same).

Based upon all of the foregoing, Petitioner's request for habeas relief must be denied because he failed to exhaust his administrative remedies.

### 2.   Petitioner's Claims Have No Merit

Petitioner's claims also fail on the merits. A district court may only extend the writ of habeas corpus to an inmate if he demonstrates that "[h]e is in [Bureau] custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2241(c)(3). Thus, habeas relief is available in this case only if Petitioner were to show a violation of the Constitution or federal law, not merely that he disagrees with a BOP decision that is within its discretion to make. Id.; see, e.g., Marshall v. Lansing, 839 F.2d 933, 949-50 (3d Cir. 1988).

#### (a)   Exclusion from § 3621(e)(2)(B)'s early release benefit

Petitioner has not met his burden of demonstrating that he is entitled to habeas relief. There was no ambiguity that his early release eligibility was provisional and conditioned upon several factors, including his successful completion of the TDAT. The BOP is charged with administering § 3621(e), see generally Lopez v. Davis, 531 U.S. 230, 239-45 (2001), and the BOP requires that inmates must *complete* the TDAT in order to be eligible for early release under the statute. See 28 C.F.R. § 550.53(a)(3); id. § 550.56. That requirement is a valid exercise of the BOP's discretion under § 3621(e) and this Court must defer to it. See, e.g., McLean v. Crabtree, 173 F.3d 1176, 1180-84 n.5 (9th

9

Cir. 1999) (collecting cases) (regulation requiring participation in and completion of TDAT is entitled to deference under Chevron, U.S.A. v. Natural Res. Def. Council, 467 U.S. 837 (1984)); Richardson v. Joslin, 501 F.3d 415, 420 (5th Cir. 2007); Rublee v. Fleming, 160 F.3d 213, 217-18 (5th Cir. 1998).

Petitioner argues that the BOP violated his due process rights, but there is no merit whatsoever to this contention. Petitioner's claims do not raise any concerns of a Constitutional dimension. Petitioner had no liberty interest in a sentence reduction under § 3621(e); therefore, there can be no procedural due process violation. See, e.g., Powell v. Weiss, — F.3d — , 2014 WL 3056535, *3 (3d Cir. July 8, 2014) (rejecting the inmate's contention that he had a protected liberty interest in his prelease status and anticipated transfer to a community correctional center, noting that "the Supreme Court has also clarified that an inmate's mere anticipation of freedom, when a privilege has been granted but not yet implemented, does not give rise to a constitutionally recognized liberty interest.") (citing Jago v. Van Curen, 454 U.S. 14, 21-22 (1981)). See Richardson, 501 F.3d at 420 (there is no liberty interest in a sentence reduction under § 3621(e); the denial of a sentence reduction would only cause an inmate to serve the remainder of his sentence under typical circumstances rather than imposing a punishment qualitatively different from the punishment characteristically suffered by a person convicted of a crime; and, the statute is discretionary) (citations omitted); see also Rublee, 160 F.3d at 217-18. His substantive due process rights were not violated either. See, e.g., Beckley v. Miner, 125 F.App'x 385, 389-90 (3d Cir. 2005) (citing Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002) (holding in context of habeas review of parole board decision that the level of arbitrariness required in order to find a substantive due process violation is egregious action or inaction that is "not merely … unreasonable, but, rather, something more egregious, which we have termed at times 'conscious shocking' or 'deliberately indifferent.'"). The BOP's decision that Petitioner was not entitled to the one-year sentence reduction because he did not complete the TDAT was within its discretion to make and did not impact his

substantive due process rights. Beckley, 125 F.App'x at 390 ("Even if the Bureau misperceived Petitioner's need for safety, to err on the side of protecting an inmate who has become a prison gang informant is neither arbitrary nor without rational basis, especially in the penal context.")

Based upon all of the foregoing, Petitioner has not demonstrated that the BOP abused its discretion, violated any federal constitution right, any federal statute, or the relevant regulations when it denied him § 3621(e)'s early release benefit.

### (b) The RRC placement decision

Petitioner claims that his Unit Manager, Tronetti, acted in an arbitrary and capricious manner by recommending him for only a 30-day placement in an RRC. He also claims that he should have been designated to home confinement instead of an RRC because that would have given him a greater likelihood of successful community reintegration.

Two statutes are relevant to the challenge at issue here: 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). As noted above, the BOP has the authority to designate an inmate's place of imprisonment. In making its designation decision, § 3621(b) requires that the BOP consider: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted, or recommending a type of penal or correctional facility as appropriate; and, (5) any pertinent policy statement by the Sentencing Commission. 18 U.S.C. § 3621(b)(1)-(5).

Section 3624, as amended by the Second Chance Act ("SCA"), PL 110-199 (April 9, 2008), provides the BOP with the discretion to determine whether and how long an inmate is to be pre-released to an RRC or home confinement. At subsection (c), it provides, in relevant part:

11

> **(c) Prerelease custody.--**
>
> **(1) In general.--**The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> **(2) Home confinement authority.--**The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
> - - -
>
> **(4) No limitations.--**Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.

18 U.S.C.A. § 3624(c)(1),(2), (4). The SCA also directed the BOP to issue new regulations regarding pre-release custody to "ensure that placement in a community correctional facility by the Bureau of Prisons is-- (A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C.§ 3624(c)(6). After the SCA was enacted, the BOP adopted regulations, codified at 28 C.F.R. § 570.22, which provide:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the timeframes set forth in this part.

28 C.F.R. § 570.22.

The foregoing discussion demonstrates that § 3624(c) provides the BOP with the discretion to determine whether and how long an inmate is to be pre-released to an RRC or home confinement, provided such pre-release confinement is practicable and the BOP considers § 3621(b)'s factors on an individual basis. 18 U.S.C. § 3624(c); 28 C.F.R. § 570.22. The statute does not mandate a particular method or procedure that the BOP must follow when making its decision, as long as the criteria set forth

12

at § 3621(b) are considered. See, e.g., Woodall, 432 F.3d at 244-49 (the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations).

This Court may only evaluate the BOP's decision regarding RRC/home confinement placement to determine if it abused its discretion by not adhering to the requirements of the applicable law. Vasquez, 684 F.3d at 434; Woodall, 432 F.3d at 244-49; Marshall, 839 F.2d at 942-51 (district court's authority to ensure that an agency adheres to the law does not permit it to displace the agency's decisionmaking process; the role of the court is limited to ensuring that the agency follows the law and its regulations (which have the force of law)).

Petitioner has not demonstrated that the BOP abused its discretion. He was properly considered for RRC placement after an evaluation of his individual circumstances against the five factors set forth in § 3621(b). Petitioner's Unit Team specifically noted that he was a "halfway house return" and that he had been insolent toward staff during his first designation to an RRC. In addition, it was noted that Petitioner failed the RDAP. Based on these factors, it was determined that his RRC placement should be limited to 30 days. (Resp's Ex. 2g, Community Programming Consideration/Re-Consideration form, dated October 29, 2013, ECF No. ECF No. 10-20 at 2). There is no basis for this Court to disturb the BOP's determination, which was a valid exercise of its discretion.

Contrary to Petitioner's suggestion, he has no substantive right to any particular length of time in an RRC or home confinement under § 3624(c). See Woodall, 432 F.3d at 244-51 (in exercising its discretion to make halfway house placement decisions, the Bureau must consider the factors set forth in § 3621(b); "[h]owever, that the [Bureau] may assign a prisoner to a halfway house does not mean that it must."); Levine v. Apker, 455 F.3d 71, 80 (2d Cir. 2006) (Congress's use of the language "may designate" in §3621(b) endows the BOP with broad discretion). See Marshall, 839 F.2d at 949-50 (the

discretionary decision made by the Parole Commission where to place an individual within the range specified by the appropriate guideline was not reviewable). He claims his due process rights have been violated, but it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. See, e.g., Powell, — F.3d at __, 2014 WL 3056535, *3 (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976) for the proposition that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."). See Beckley v. Miner, 125 F.App'x 385, 389 (3d Cir. 2005) ("It is well settled, and the parties agree, that the Bureau has nearly exclusive jurisdiction to classify and transfer prisoners."). He has no liberty interest in RRC or home placement, see, e.g., Powell, — F.3d at __ , 2014 WL 3056535, at * 3, only in the BOP's consideration of his placement, which is what he received. Thus, there can be no procedural due process violation in connection with the BOP's decision about his RRC/home confinement placement. Petitioner also contends that the determination that he receive only 30 days of RRC placement violated his substantive due process rights because it was arbitrary and capricious. Review of the exhibits provided by the Respondents in this case shows that there is some factual support for the BOP's decision. Petitioner's substantive due process rights were not implicated in any way by its decision.

  Based upon all of the foregoing, Petitioner has not demonstrated that the BOP abused its discretion, violated any federal constitution right, any federal statute, or the relevant regulations when it decided that he would receive only 30 days of RRC placement and no designation to home confinement.

### C. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the petition for a writ of habeas corpus be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed fourteen (14) days from the date of this Order to file objections to this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 27, 2014

cc: The Honorable J. Frederick Motz
United States District Judge